[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The complaint in this case alleges the plaintiff, a minor, was a patron of the defendant restaurant who fell in the restaurant as the result of the defendant's negligence, suffering a fractured right ankle and incurring hospital and medical expenses. The answer denies the allegations of negligence and alleges the special defense that the plaintiff herself was negligent.
The facts are as follows:
The defendant, Hometown Buffet, Inc. is a restaurant in West Hartford at which customers serve themselves, buffet style, from various stations. Desserts are obtained at an aisle on one side of which are baked goods and on the other side ice cream and yogurt. The aisle intersects with a hallway leading to the kitchen and its floor is tile.
The plaintiff, Sharna C. Clennon, an eleven-year-old girl, accompanied her mother, brother and several other family members to the defendant restaurant on June 30, 2001. It was the first time she had been there. While her family obtained food at the buffet stations, plaintiff went directly to the ice cream dispenser for her favorite dessert. At that time she saw ice cream spilled on the floor near the ice cream station. After plaintiff's mother finished her meal, she asked the plaintiff to get her an ice cream cone.
In the meantime, Brendan McKibbin, manager of the restaurant, saw the mess near the ice cream station and ordered an employee, Carlos Figarola, to mop the dessert aisle. The manager testified that mopping leaves a slight film of water on the tile that takes about five to seven minutes to dry. However, the heat blown from the ice cream machine dries the floor immediately adjacent to the dispenser faster. He further testified after the area was mopped, yellow cones were placed in the mopped area to warn customers. They are customarily removed when the area CT Page 2905-bu is dry. However, customers still traverse the mopped areas to get their food.
On the mission to obtain the ice cream for her mother, the plaintiff proceeded from the family table in the dining area behind the ice cream and yogurt dispensers into a hall leading to the kitchen, around the corner to the dessert aisle. She fell at the intersection of the hall and the aisle. When she fell her hand felt the floor and noticed it was "oily and greasy," and she saw footprints on the floor. After she fell, she saw the yellow warning cones and she landed near one.
Her scream of pain alerted the manager who was nearby. He estimated the plaintiff fell about five minutes after Figarola had mopped the dessert area and that that area was dry at the time plaintiff fell.
Plaintiff's brother heard his sister crying. He found her lying on the floor, picked her up and put her on a chair. He testified that he saw water coming from the kitchen, but, based on other evidence, the court does not believe this testimony. Plaintiff's mother went to the plaintiff after she was placed in the chair and noticed the floor near the chair was wet and greasy.
Xandra Braville, a patron at the restaurant, testified that she observed the mess of melting ice cream in the dessert aisle. When she was finishing her meal, her son told her a girl was crying. Ms. Braville, a medical assistant went to help the plaintiff. When she approached, she noticed the area of the dessert aisle had been mopped and was still wet.
The court resolves the conflicting testimony by concluding that the area where plaintiff fell was still wet from the mopping. This is confirmed by the fact that a yellow cone was still on the floor very near where plaintiff fell. The cones warned the plaintiff of the slippery conditions, but because of the route plaintiff traveled from her family table toward the dessert aisle, she did not see the cones until she was already at the intersection of the hallway and the aisle. There was no evidence adduced that she proceeded without caution.
The duty owed by the defendant to the plaintiff, as a business invitee, was "to exercise reasonable care to have and maintain the premises reasonably safe for the reasonably to be anticipated uses the invitee would make of them." Kopjanski v. Vista, 160 Conn. 61, 64
(1970). 2 Restatement of Torts, Sections 341 A, 343.
Here the court finds the defendant breached that duty by mopping the floor and leaving it wet in the area of, and at the time the plaintiff CT Page 2905-bv fell. Since the defendant itself created the dangerous condition, there is no issue of its notice of it. The court further finds that the defendants' negligence was a substantial factor in. causing the plaintiff to fall and the proximate cause of the injuries that she suffered. While the defendant pleaded that the plaintiff herself was negligent, the court finds no evidence to support that allegation.
After the plaintiff fell she was taken to St. Francis Hospital. The doctors there diagnosed her injury as a sprain of the right ankle and placed her on crutches. However, she did not get better and went back to the hospital on June 17, 2001 where an x-ray revealed she had suffered a fracture. Her ankle was put into a cast and her activities were restricted. The cast was removed on August 17. She was treated by an orthopedic surgeon, who reported on September 10, 2001 that there was still swelling and the patient was in need of additional physical therapy. On October 15, 2001, the surgeon found that the fracture was healing, there was no need for additional therapy and plaintiff was advised to start gym at school. On December 3, 2001, the doctor determined that the fracture had healed "nicely" and she could resume normal activities. On January 3, 2002, the doctor's report stated that the plaintiff was playing basketball in the gym at school, and "I do not think there is anything to worry about." On August 5, 2002, the doctor stated that there was "some residual mechanical pain as expected." He further noted that if the plaintiff went through a growth spurt, she would need to be re-evaluated and he believed the plaintiff had a five percent (5%) permanent partial disability of her right ankle in relation to her injuries. No evidence was offered as to her life expectancy.
The plaintiff incurred hospital and medical expenses totaling $3,937.72. Although she testified that the injury prevented her from attending summer school, as a result of which she was held back a year, the court does not believe this testimony.
The court awards the plaintiff economic damages of $3,937.72, and non-economic damages of $15,000 for a total award of $18,937.72, plus the costs of this action.
 BY THE COURT Robert Satter Judge Trial Referee
CT Page 2905-bw